**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

| | |
|---|---|
| **LINDA J. TOMPKINS,** )<br>    Plaintiff )<br> )<br>v. )<br> )<br> )<br>**JO ANNE B. BARNHART**, )<br> **Commissioner of Social Security,** )<br>    Defendant ) | Civil Action No. 2:05cv00036<br>**REPORT AND<br>RECOMMENDATION**<br><br>By: PAMELA MEADE SARGENT<br>United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Linda J. Tompkins, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003 & Supp. 2005). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning

-1-

mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Tompkins protectively filed her application for SSI on or about September 19, 2003, alleging disability as of July 31, 1998,[1] based on a nervous condition, back problems and arthritis. (Record, ("R."), at 47-49, 53, 63.) The claim was denied initially and upon reconsideration. (R. at 32-34, 37, 38-40.) Tompkins then requested a hearing before an administrative law judge, ("ALJ"). (R. at 41.) The ALJ held a hearing on December 23, 2004, at which Tompkins was represented by counsel. (R. at 184-202.)

By decision dated March 11, 2005, the ALJ denied Tompkins's claim. (R. at 16-24.) The ALJ found that Tompkins had not engaged in substantial gainful activity since September 19, 2003. (R. at 23.) The ALJ also found that the medical evidence established that Tompkins suffered from severe mental and musculoskeletal impairments, but he found that Tompkins did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23.) The ALJ found that Tompkins's allegations were not totally credible. (R. at 23.) The ALJ found that Tompkins retained the residual functional

---

[1]Tompkins amended her date of alleged disability to September 19, 2003. (R. at 186-87.)

capacity to perform simple, unskilled light work[2] that did not require overhead reaching or working with the general public. (R. at 23.) The ALJ found that Tompkins was unable to perform any of her past relevant work. (R. at 23.) Based on Tompkins's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that Tompkins could perform jobs existing in significant numbers in the national economy. (R. at 23.) Thus, the ALJ found that Tompkins was not disabled under the Act and was not eligible for benefits. (R. at 23-24.) *See* 20 C.F.R. § 416.920(g) (2005).

After the ALJ issued his decision, Tompkins pursued her administrative appeals, (R. at 12), but the Appeals Council denied her request for review. (R. at 7-11.) Tompkins then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2005). The case is before this court on Tompkins's motion for summary judgment filed December 20, 2005, and on the Commissioner's motion for summary judgment filed January 23, 2006.

## *II. Facts*

Tompkins was born in 1959, (R. at 47), which classifies her as a "younger person" under 20 C.F.R. § 416.963(c) (2005). Tompkins has a seventh-grade education and past work experience as a housekeeper, a stock clerk, a general laborer and a

---

[2]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can do light work, she also can do sedentary work. *See* 20 C.F.R. § 416.967(b) (2005).

babysitter. (R. at 71, 187-89.)

Tompkins testified at her hearing that she suffered from anxiety attacks, nervousness and depression. (R. at 190.) She stated that she suffered from back pain. (R. at 190.) She also stated that she experienced two anxiety attacks per week. (R. at 191.) Tompkins testified that she could lift and carry items weighing up to six pounds. (R. at 193.) She stated that she could stand and/or walk for up to 20 minutes without interruption. (R. at 194.) She stated that she did not like herself and, thus, had crying spells weekly. (R. at 192.) Tompkins stated that there is a history of mental illness in her family. (R. at 196.)

Donna Bardsley, a vocational expert, also was present and testified at Tompkins's hearing. (R. at 199-200.) Bardsley classified Tompkins's past work as a housekeeper and a cleaner as light and unskilled. (R. at 199.) Bardsley was asked to consider a hypothetical individual of Tompkins's age, education and work experience, who could perform light work that did not require overhead reaching or regular interaction with the general public. (R. at 199-200.) Bardsley testified that such an individual could perform jobs existing in significant numbers in the national economy, including those of a hand packager, a sorter, an assembler, an inspector and food service occupations. (R. at 200.) Bardsley was next asked to consider the same individual, but who was restricted as set forth in the assessment completed by B. Wayne Lanthorn, Ph.D. (R. at 176-77, 200.) Bardsley testified that there would be no jobs available that such an individual could perform. (R. at 200.)

In rendering his decision, the ALJ reviewed records from Dr. Norman Ratliff,

M.D.; Dr. Kevin Blackwell, D.O.; Norton Community Hospital; St. Mary's Family Center; Dr. Arthur Amador, M.D.; B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; Dr. Donald R. Williams, M.D., a state agency physician; R.J. Milan Jr., Ph.D., a state agency psychologist; and Wise County Public Schools.

The record indicates that Tompkins sought treatment from Dr. Norman Ratliff, M.D., from November 7, 1996, to October 5, 2004, for various complaints such as anxiety, arthritis, bronchitis and upper respiratory problems. (R at 111-17, 158-59.) In August 2001, Dr. Ratliff diagnosed arthritis of the left knee. (R. at 159.) He began treating Tompkins for anxiety in May 2002 and continued to do so through August 2004. (R. at 113, 158.) Dr. Ratliff prescribed Xanax. (R. at 113, 158.) He placed no limitations on Tompkins's work-related abilities.

On February 20, 2004, Dr. Kevin Blackwell, D.O., evaluated Tompkins for her complaints of back pain and shoulder pain. (R. at 128-31.) Upon examination, Dr. Blackwell found no spasm or obvious deformities. (R. at 130.) X-rays of Tompkins's lumbar spine showed mild degenerative changes. (R. at 134.) Dr. Blackwell reported that Tompkins's gait was symmetrical and balanced. (R. at 130.) Upper and lower joint examination was unremarkable except for some limitation with above head reach on shoulder exam. (R. at 130.) Tompkins's grip strength was good. (R. at 130.) Dr. Blackwell diagnosed chronic low back pain and chronic shoulder pain. (R. at 130.) He indicated that Tompkins would be limited in her ability to reach above her head. (R. at 130.) He reported that Tompkins's above-head reaching should be limited to less than 50 percent of a day. (R. at 130.) No other limitations were noted. (R. at 130.)

On April 27, 2004, R.J. Milan Jr., Ph.D., a state agency psychologist, completed

-5-

Case 2:05-cv-00036-GMW-PMS   Document 16   Filed 04/26/06   Page 5 of 15   Pageid#: 70

a Psychiatric Review Technique form, ("PRTF"), indicating that Tompkins had a nonsevere anxiety-related disorder that required referral to another medical speciality. (R. at 135-49.) Milan indicated that Tompkins was not restricted in her activities of daily living, in maintaining social functioning or in maintaining concentration, persistence, and pace, and that she had experienced no episodes of decompensation. (R. at 145.)

On April 27, 2004, Dr. Donald R. Williams, M.D., a state agency physician, indicated that Tompkins had the residual functional capacity to perform medium work.[3] (R. at 150-57.) He indicated that Tompkins could frequently balance, stoop, kneel, crouch and crawl and never climb. (R. at 153.) No manipulative, visual or communicative limitations were noted. (R. at 153-54.) Dr. Williams indicated that Tompkins should avoid working around hazards. (R. at 155.) This assessment was affirmed by Dr. Michael J. Hartman, M.D., another state agency physician, on July 22, 2004. (R. at 157.)

Tompkins was seen at St. Mary's Family Center on four occasions between February 19, 2004, and July 28, 2004. (R. at 118-27, 162-65.) It was consistently reported that Tompkins's symptoms of anxiety and depression were moderate and that her concentration was normal. (R. at 119, 163, 165.) It was indicated that no limitations were placed on Tompkins's functional abilities. (R. at 119, 163, 165.) Tompkins was diagnosed with a panic disorder with agoraphobia and a dysthymic disorder. (R. at 126.)

---

[3]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. § 416.967(c) (2005).

A Global Assessment of Functioning, ("GAF"), score of 58[4] was assessed. (R. at 126.)

Tompkins sought treatment from Dr. Arthur Amador, M.D., from August 30, 2004,[5] through November 22, 2004. (R. at 166-68). On September 27, 2004, Tompkins reported that she stayed busy during the day taking care of her daughter. (R. at 168.) Her mood and affect were anxious. (R. at 168.) Dr. Amador diagnosed generalized anxiety disorder. (R. at 168.) On October 25, 2004, Dr. Amador reported that Tompkins's mood was mildly anxious. (R. at 167.) On November 22, 2004, Dr. Amador reported that Tompkins's mood was anxious and her affect was appropriate. (R. at 166.) Dr. Amador diagnosed generalized anxiety disorder. (R. at 166.) Dr. Amador did not place any limitations on Tompkins's work-related abilities. (R. at 166.)

On November 9, 2004, B. Wayne Lanthorn, a licensed clinical psychologist, evaluated Tompkins at the request of Tompkins's attorney. (R. at 169-75.) The Wechsler Adult Intelligence Scale-III, ("WAIS-III"), test was administered, and Tompkins obtained a verbal IQ score of 69, a performance IQ score of 67 and a full-scale IQ score of 65.[6] (R. at 170.) Tompkins showed no evidence or signs of ongoing

---

[4] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

[5] Dr. Amador's August 30, 2004, report is not included in the record. It is, however, referenced to in his September 2004 office note. (R. at 168.)

[6] Records from Wise County Public Schools indicate that Tompkins obtained an IQ score of 98 while in the second grade, an IQ score of 76 while in the third grade and an IQ score of 80 while in the fourth grade. (R. at 109-10.)

psychotic processes or symptoms of delusional thinking. (R. at 170.) Tompkins's affect was markedly flat and blunt. (R. at 171.) Her overall mood was described as predominantly depressed. (R. at 171.) The Minnesota Multiphasic Personality Inventory-2, ("MMPI-2"), test was administered, and Lanthorn indicated that Tompkins did not generate a valid profile. (R. at 174.) Lanthorn reported that it was evident from an analysis of Tompkins's questionnaire profile that Tompkins did not fully understand much of the task that was before her. (R. at 174.) Lanthorn diagnosed recurrent, severe, major depressive disorder, panic disorder without agoraphobia, generalized anxiety disorder and mild mental retardation. (R. at 174.) Lanthorn assessed a GAF score of 45-50.[7] (R. at 175.)

Lanthorn completed a mental assessment indicating that Tompkins had satisfactory ability to understand, remember and carry out short, simple instructions. (R. at 176-77.) He indicated that Tompkins had seriously limited, but not precluded ability to make judgments on simple work-related decisions and to respond appropriately to changes in a routine work setting. (R. at 176-77.) He also indicated that Tompkins had no useful ability to understand, remember and carry out detailed instructions, to interact appropriately with the public, to interact appropriately with supervisors, to interact appropriately with co-workers and to respond appropriately to changes in a routine work setting. (R. at 176-77.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20

---

[7]A GAF of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

-8-

C.F.R. § 416.920 (2005). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920 (2005). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2005).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §1382c(a)(3)(A)-(B) (West 2003 & Supp. 2005); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated March 11, 2005, the ALJ denied Tompkins's claim. (R. at 16-24.) The ALJ found that the medical evidence established that Tompkins suffered from severe mental and musculoskeletal impairments, but he found that Tompkins did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23.) The ALJ found that Tompkins retained the residual functional capacity to perform simple, unskilled light work that did not require overhead reaching or working with the general public. (R. at

23.) The ALJ found that Tompkins was unable to perform any of her past relevant work. (R. at 23.) Based on Tompkins's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that Tompkins could perform jobs existing in significant numbers in the national economy. (R. at 23.) Thus, the ALJ found that Tompkins was not disabled under the Act and was not eligible for benefits. (R. at 23-24.) *See* 20 C.F.R. § 416.920(g) (2005).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Tompkins argues that the ALJ erred by failing to find that her mental impairment met or equaled the medical listing for anxiety-related disorders, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 6-9.) Tompkins also argues that the ALJ erred by substituting his views on the severity of her psychiatric impairments for those of a trained professional. (Plaintiff's Brief at 9-12.)

Tompkins argues that the ALJ erred by failing to find that she met or equaled § 12.06. (Plaintiff's Brief at 6-9.) To meet or equal the listed impairment for anxiety-related disorders found at § 12.06, a claimant must show by medically documented findings that she suffers from at least one of the following:

> 1. Generalized persistent anxiety accompanied by three of the following: motor tension, autonomic hyperactivity, apprehensive expectation or vigilance and scanning;
> 2. A persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity or situation;
> 3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week;
> 4. Recurrent obsessions or compulsions which are a source of marked distress; or
> 5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(A) (2005). A claimant also must show that her condition results in at least two of the following: marked restriction of activities

-11-

of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(B) (2005). If a claimant cannot show that her condition resulted in two of the previous problems, she may still qualify for benefits under this section if she can show that her symptoms have resulted in a complete inability to function independently outside the area of her home. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(C) (2005).

Based on my review of the record, I find that substantial evidence exists to support the ALJ's finding that Tompkins's condition did not meet or equal § 12.06. The record is void of evidence showing that Tompkins ever displayed signs or symptoms such as motor tension, autonomic hyperactivity, apprehensive expectations or vigilance and scanning. There is no evidence that Tompkins ever displayed a persistent irrational fear of a specific object, activity or situation; experienced recurrent, severe panic attacks on average of at least once per week; experienced recurrent obsessions or compulsions; or experienced recurrent and intrusive recollections of a traumatic experience causing marked distress. While Lanthorn indicated that Tompkins had no useful ability to perform most mental vocational functions, (R. at 176-77), the ALJ gave little weight to Lanthorn's assessment. (R. at 21.) The ALJ found that Lanthorn's assessment was based only upon his one-time examination and was inconsistent with the other objective evidence of record. (R. at 20-21.)

The record indicates that Tompkins sought only minimal mental health treatment despite initially alleging disability due to anxiety since 1998. (R. at 47.) Treatment notes

from St. Mary's Family Center show that Tompkins was diagnosed with a panic disorder with agoraphobia and a dysthymic disorder. (R. at 126.) It was indicated that no limitations were placed on Tompkins's functional screens. (R. at 119, 163, 165.) In addition, Dr. Amador indicated that Tompkins's mood was mildly anxious, and he diagnosed generalized anxiety disorder. (R. at 166-68.) Dr. Amador did not place any limitations on Tompkins's work-related abilities. (R. at 166.) Furthermore, Tompkins reported having custody of her young granddaughter and acting as her primary caregiver. (R. at 119, 168.)

I also find that substantial evidence exists to support the ALJ's finding that Tompkins retained the residual functional capacity to perform simple, unskilled light work that did not require overhead reaching or working with the general public. This finding is supported by the assessments of the state agency physician and psychologist and Dr. Blackwell. (R. at 128-31, 135-49, 150-57.)

For these reasons, I find that substantial evidence exists to support the ALJ's finding that Tompkins was not disabled.

Based on my finding that the written arguments more than adequately address the issues before the court, I will deny the plaintiff's request to present oral argument.

**PROPOSED FINDINGS OF FACT**

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

-13-

1. Substantial evidence exists to support the ALJ's finding that Tompkins's mental impairment did not meet or equal the criteria for anxiety-related disorders, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06;

2. Substantial evidence exists to support the ALJ's finding with regard to Tompkins's residual functional capacity; and

3. Substantial evidence exists to support the ALJ's finding that Tompkins was not disabled under the Act.

### RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Tompkins's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

### **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(c) (West 1993 & Supp. 2005):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further

-14-

evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen M. Williams, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 26th day of April 2006.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE